**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

QUANTUM CORPORATE FUNDING, INC.,

                              Plaintiff,


          v.


BAST HATFIELD, INC.,

                              Defendant.                          **5:04-CV-137**
                                                                  **(FJS/DEP)**

BAST HATFIELD, INC.,

                              Interpleader-Plaintiff,


          v.


FIDELITY & GUARANTY INSURANCE COMPANY;
UNITED STATES OF AMERICA, DEPARTMENT OF
TREASURY-INTERNAL REVENUE SERVICE; and
EDISON BRIDGE, LLC,

                              Interpleader-Defendants.
_____

**APPEARANCES**                              **OF COUNSEL**

**MELVIN & MELVIN, LLP**                     **ROGER W. BRADLEY, ESQ.**
217 South Salina Street
7th Floor
Syracuse, New York 13202
Attorneys for Plaintiff


**GORDON, SIEGEL, MASTRO,**                  **MELANIE J. LaFOND, ESQ.**
**MULLANEY, GORDON & GALVIN, P.C.**
Airport Park
9 Cornell Road
Latham, New York 12110
Attorneys for Defendant/Interpleader-Plaintiff

**COUCH WHITE, LLP**          **JAMES J. BARRIERE, ESQ.**
540 Broadway                     **JEREMY M. SMITH, ESQ.**
Albany, New York 12201
Attorneys for Interpleader-Defendant Fidelity
& Guaranty Insurance Company

**UNITED STATES DEPARTMENT OF**    **BONNIE J. PERLIN, ESQ.**
**JUSTICE, TAX DIVISION**
P.O. Box 55
Ben Franklin Station
Washington, D.C. 20044
Attorneys for Interpleader-Defendant United
States of America, Department of Treasury-
Internal Revenue Service

**EDISON BRIDGE, LLC**          **NO APPEARANCE**

**SCULLIN, Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff's verified complaint alleges a breach of contract claim against Defendant Bast

Hatfield, Inc.

Defendant's interpleader complaint acknowledges that $87,836.09 is due and owing

under a contract between it and Interpleader-Defendant Edison Bridge, LLC ("Edison")[1] but

expresses uncertainty as to which Interpleader-Defendants it should pay.[2]

Interpleader-Defendant United States asserts a cross-claim against Interpleader-

---

[1] Interpleader-Defendant Edison has not filed any papers in this action.

[2] Defendant's interpleader complaint also named the State of New York Department of Taxation and Finance ("SNYDTF") as an Interpleader-Defendant.  However, as a result of Defendant's stipulation that Magistrate Judge Peebles so ordered on June 24, 2004, the SNYDTF was dismissed from this action without prejudice.  *See* Dkt. No. 24.

Defendants Edison and Fidelity & Guaranty Insurance Company ("Fidelity") and against the State of New York Department of Taxation and Finance ("SNYDTF") alleging that it has the senior lien and is entitled to the interpleader fund.

Interpleader-Defendant Fidelity asserts counterclaims against Defendant contending that it is due payments from Defendant of (1) $52,357.04 together with interest on an October 12, 2000 contract ("D.O.T. Subcontract") between Defendant and Interpleader-Defendant Edison; (2) $150,340.90 together with interest on a second October 12, 2000 contract ("Site Work Subcontract") between Defendant and Interpleader-Defendant Edison; (3) $202,697.94 in *quantum meruit* together with interest for work that Interpleader-Defendant Edison and its subcontractors, suppliers, and laborers performed for Defendant; and (4) $202,697.94 together with interest on the basis of Defendant's unjust enrichment by the value of the labor and materials that Interpleader-Defendant Fidelity provided to Defendant.

Currently before the Court are (1) Interpleader-Defendant Fidelity's motion for partial summary judgment,[3] (2) Interpleader-Defendant United States' summary judgment motion,[4] (3) Interpleader-Defendant United States' motion for leave to amend its cross-claim, and (4) Defendant's request for leave to deposit the interpleader fund into the Court's registry less its attorney's fees and costs and to be discharged from further liability to the Interpleader-Defendants.

---

[3] The Court notes that, despite Interpleader-Defendant Fidelity's characterization of its motion, it appears to seek summary judgment on all aspects of the case.

[4] The Court notes that, although Interpleader-Defendant United States' motion claims to seek a declaration that it has the first priority to the interpleader funds, its pleadings do not seek declaratory relief but the recovery of the interpleader fund itself.

## II. BACKGROUND

The following facts are not in dispute.  This action arises out of the construction of a Wal-Mart store in Halfmoon, New York ("Project").  On October 13, 2000, Defendant, as general contractor, entered into the D.O.T. Subcontract with Interpleader-Defendant Edison, as subcontractor, whereby Interpleader-Defendant Edison agreed to provide certain labor and materials in connection with the New York State Department of Transportation ("NYSDOT") regarding the Project.  On October 13, 2000, Interpleader-Defendant Fidelity, as surety, and Interpleader-Defendant Edison, as principal, executed and delivered to Defendant, as obligee, a subcontract performance bond and a subcontract labor and material payment bond.

On October 13, 2000, Defendant, as general contractor, entered into the Site Work Subcontract with Interpleader-Defendant Edison, as subcontractor, whereby Interpleader-Defendant Edison agreed to provide certain labor and materials in connection with the site work regarding the Project.  On October 13, 2000, Interpleader-Defendant Fidelity, as surety, and Interpleader-Defendant Edison, as principal, executed and delivered to Defendant, as obligee, a subcontract performance bond and a subcontract labor and material payment bond.

In May 2001, Interpleader-Defendant Edison entered into a series of assignment agreements with Plaintiff under which Plaintiff agreed to pay Interpleader-Defendant Edison's subcontractors, suppliers, and laborers in exchange for Interpleader-Defendant Edison's assignment to Plaintiff of the right to recover certain contract amounts related to the Project.

On July 16, 2001, the NYSDOT notified Defendant that the highway improvements to Route 9 were substantially complete.  On July 17, 2001, the Town of Halfmoon issued a certificate of occupancy for the Project.

Before September, 2001, Interpleader-Defendant Edison became insolvent and began to fail to pay its obligations with respect to the Project.  In September 2001, Interpleader-Defendant Fidelity undertook to complete all of Interpleader-Defendant Edison's remaining payment obligations with respect to the Project.  Interpleader-Defendants Edison and/or Fidelity substantially completed the work required under the D.O.T. Subcontract.  On September 13, 2002, Interpleader-Defendant Fidelity sent Defendant a notice of claim for the entire amount due to Interpleader-Defendant Edison under the D.O.T. Subcontract.  Defendant paid Interpleader-Defendant Edison $747,742.96 on the D.O.T. Subcontract, leaving a balance due of $52,357.04.  Defendant paid Interpleader-Defendant Edison $1,113,294.60 on the Site Work Contract, leaving a balance due of $150,340.90.

On September 24, 2001, Interpleader-Defendant United States served a notice of levy on Defendant for $462,752.43 in taxes that Interpleader-Defendant Edison owed.[5]

By letter dated September 28, 2001, Interpleader-Defendant Fidelity undertook to investigate a claim that Plaintiff made against the bond related to the Site Work Subcontract, which claim Fidelity paid following its investigation.

On December 19, 2001, Plaintiff executed a release of Interpleader-Defendants Fidelity and Edison for all claims arising from the Project.  The agreement between Plaintiff and Interpleader-Defendant Fidelity provided that, in exchange for a payment from Interpleader-Defendant Fidelity, Interpleader-Defendant Fidelity was subrogated to all of Plaintiff's rights related to the Project.  Plaintiff also expressly assigned its rights to Interpleader-Defendant

---

[5] Although Interpleader-Defendant United States asserts that Interpleader-Defendant Edison owes a much greater amount in taxes, it seeks to recover $150,900.38 from the interpleader fund itself. *See* Dkt. No. 51 at Pt. 2 at 2.

Fidelity.

Plaintiff filed suit against Defendant in the Supreme Court of the State of New York, County of New York, on June 13, 2002.  On December 4, 2002, Defendant filed its interpleader complaint against Interpleader-Defendants and NYSDTF in the same court.  On April 22, 2003, Interpleader-Defendant United States filed a notice of removal in the United States District Court for the Southern District of New York.  On August 28, 2003, NYSDTF moved that court to transfer the case to this Court.  District Judge Koeltl granted that motion on January 9, 2004.

The interpleader fund consists of $191,747.63 of contract balances that Defendant owes or owed to Interpleader-Defendant Edison, less certain fees and costs of Defendant.[6] Interpleader-Defendant Edison has defaulted and failed to appear in this action.

On May 6, 2005, the Court heard oral argument in support of, and in opposition to, the current motions and reserved judgment.  The following constitutes the Court's written decision regarding these motions.


## III. DISCUSSION

### A.      Standard of review

A court may grant summary judgment when the moving party carries its burden of showing the absence of a genuine issue of material fact.  *See* Fed. R. Civ. P. 56(c).  In making this determination, the court must resolve all ambiguities and draw all reasonable inferences in a light most favorable to the non-moving party.  *See Bryant v. Maffucci*, 923 F.2d 979, 982 (2d

---

[6] Defendant agrees with this statement despite its allegation in its interpleader complaint that the interpleader fund was $87,836.09.  *See* Dkt. No. 48 at 1.

Cir. 1991) (citation omitted).  If the moving party has met its burden, the nonmoving party may

not rely upon his pleadings but must come forward with specific facts showing that there is a

genuine issue for trial.  *See* Fed. R. Civ. P. 56(e).

**B.      Interpleader-Defendant Fidelity's motion for partial summary judgment**

Interpleader-Defendant Fidelity contends that it is entitled to summary judgment because

it holds an equitable lien on the interpleader fund that, under federal tax law, is senior to

Interpleader-Defendant United States' interest.  Regardless of the merits of Interpleader-

Defendant Fidelity's argument about federal tax law, there is a preliminary question with respect

to the relationship between state and federal law in this case.  The Second Circuit has noted that

> as a general rule, the priority of competing liens against a taxpayer's
> property, including tax liens, is governed by federal law.  *See Aquilino v.
> United States*, 363 U.S. 509, 80 S. Ct. 1277, 4 L. Ed. 2d 1365 (1960).  But
> in *Aquilino*, the Supreme Court held that it is state law that determines the
> nature of the interest each claimant has in disputed proceeds.  *Id.* at 515,
> 80 S. Ct. at 1281.  For example, it is state law that determines whether a
> claim is recognized as an ordinary lien or accorded trust claim status.  *Id.*
>
> It is New York that determines what interest competing claimants
> have in the proceeds of a public improvement contract.  New York has
> spoken clearly on this issue in Article 3-A, directing that the proceeds of a
> public improvement contract constitute a trust for certain claimants. . . .

*Titan Indem. Co. v. Triborough Bridge & Tunnel Auth., Inc.*, 135 F.3d 831, 836 (2d Cir. 1998).

Although this case does not involve a public improvement contract, New York law treats

contracts for the improvement of real property in a similar fashion.  *See* N.Y. Lien Law § 70(1)

(McKinney 2005).  Therefore, New York Lien Law §§ 70-79-a ("Article 3-A") defines the basic

contours of this action.

Section 70(1) of New York Lien Law provides, in pertinent part, that

> [t]he funds described in this section . . . received by a contractor under or in connection with a contract for an improvement of real property . . . and any right of action for any such funds due or earned or to become due or earned, shall constitute assets of a trust for the purposes provided in section seventy-one of this chapter.

N.Y. Lien Law § 70(1) (McKinney 2005).  In this case, the interpleader funds are monies that Defendant holds as a trustee for the benefit of the trust fund beneficiaries.  Therefore, the interpleader fund is an Article 3-A trust.

In order for Interpleader-Defendant Fidelity to recover from the interpleader fund, it must be a trust fund beneficiary and follow the procedure set forth in Article 3-A for enforcing its interest.  Section 71(2) of New York Lien Law defines the trust beneficiaries:

> [t]he trust assets of which a contractor or subcontractor is trustee shall be held and applied for the following expenditures arising out of the improvement of real property, including home improvement or public improvement and incurred in the performance of his contract or subcontract, as the case may be:
>
> (a) payment of claims of subcontractors, architects, engineers, surveyors, laborers and materialmen;
>
> (b) payment of the amount of taxes based on payrolls including such persons and withheld or required to be withheld and taxes based on the purchase price or value of materials or equipment required to be installed or furnished in connection with the performance of the improvement;
>
> (c) payment of taxes and unemployment insurance and other contributions due by reason of the employment out of which such claims arose;
>
> (d) payment of any benefits or wage supplements, or the amounts necessary to provide such benefits or furnish such supplements, to the extent that the trustee, as employer, is obligated to pay or provide such benefits or furnish such supplements by any agreement to which he is a party;

-8-

> (e) payment of premiums on a surety bond or bonds filed and premiums on insurance accrued during the making of the improvement, including home improvement, or pubic improvement;
>
> (f) payment to which the owner is entitled pursuant to the provisions of section seventy-one-a of this chapter.

N.Y. Lien Law § 71(2) (McKinney 2005).  Interpleader-Defendant Fidelity arguably possesses interests under the trust since as a surety it is subrogated to Interpleader-Defendant Edison's interests, as an assignee it is subrogated to Plaintiff's interests, and as a party who has paid persons who would otherwise be trust beneficiaries it is subrogated to their interests.

However, in order for Interpleader-Defendant Fidelity to enforce its interests, it must comply with the requirements of New York Lien Law § 77, which provides, in pertinent part, that

> [a] trust arising under this article may be enforced by the holder of any trust claim, including any person subrogated to the right of a beneficiary of the trust holding a trust claim, in a *representative action* brought for the benefit of all beneficiaries of the trust.  *An action to enforce the trust may also be maintained by the trustee.*  In any such action, except as otherwise provided in this article, the practice, pleadings, forms and procedure shall conform as nearly as may be to the practice, pleadings, forms and procedure in a *class action* as provided in article nine of the civil practice law and rules . . . .

N.Y. Lien Law a § 77(1) (McKinney 2005) (emphasis added).  Interpleader-Defendant Fidelity has not brought a representative action on behalf of all trust beneficiaries.  Its counterclaims against Defendant merely assert that Interpleader-Defendant Fidelity is entitled to the interpleader funds.  *See* Dkt. No. 13 at ¶¶ 14-56.  Accordingly, since Interpleader-Defendant Fidelity has not brought a representative action to enforce the Article 3-A trust, the Court denies its motion for partial summary judgment.

**C.      Interpleader-Defendant United States' motion for summary judgment**

Interpleader-Defendant United States contends that it is entitled to summary judgment on its Article 3-A claim.  Interpleader-Defendant Fidelity opposes Interpleader-Defendant United States' motion, arguing, *inter alia*, that Interpleader-Defendant United States failed to allege an Article 3-A claim in its pleadings, that the time for Interpleader-Defendant United States to amend its pleadings is past, and that Article 3-A's statute of limitations bars Interpleader-Defendant United States from initiating an action to enforce the trust.

In its answer to Defendant's Interpleader Complaint, Interpleader-Defendant United States asserted a cross-claim against Interpleader-Defendants Edison and Fidelity and against the SNYDTF, alleging that

> 13.      Edison Bridge is indebted to the United States for unpaid federal taxes, penalties and interest thereon in the amount of $ 462,752.43 as of October 24, 2001, plus additional interest and penalties thereafter as provided by law.
> 14.      Upon information and belief, the interest of defendants Edison Bridge, Fidelity & Guaranty Insurance Company and the State of New York Department of Taxation and Finance in the interpleader fund are junior to the lien and levy of the United States Internal Revenue Service.
> WHEREFORE the United States prays that this Court satisfy the United States' interest out of the interpleader fund . . . .

*See* Dkt. No. 2 at 3-4.  Interpleader-Defendant United States certainly did not refer to Article 3-A.  Furthermore, it apparently did not have Article 3-A in mind because it distinguished the money that Interpleader-Defendant Edison owed it arising from employment in connection with the D.O.T. and Site Work Subcontracts from the total amount that Interpleader-Defendant Edison owed it.

Rule 8(a) of the Federal Rules of Civil Procedure requires that a pleading contain "a short

and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

8(a).  It is doubtful whether Interpleader-Defendant United States' cross-claim gave the other

parties adequate notice that it was seeking to assert a claim pursuant to Article 3-A.  However, in

Interpleader-Defendant Fidelity's amended answer to the Interpleader Complaint, it asserted six

affirmative defenses, the first two of which stated that "[p]ursuant to Article 3-A of the New

York Lien Law, this answering interpleaded Defendant has priority to all of the unexpended

balances of contract funds remaining in the custody of the Defendant/Interpleading Defendant

[sic]" and that

> [p]ursuant to Article 3-A of New York Lien Law, all of the unexpended
> balances of contract funds constitute trust funds which are to be first
> applied to claims of the subcontractors and suppliers of labor and materials
> of which the interpleaded Defendant is an assignee and due holder of all
> subrogation and other rights.

*See* Dkt. No. 13 at ¶¶ 12-13.  So at least as of April 23, 2004, Interpleader-Defendant Fidelity

and, consequently, all other parties were aware that Article 3-A was an issue in this case.

Furthermore, on May 13, 2004, Interpleader-Defendant United States filed its supplement to the

joint case management plan.  *See* Dkt. No. 17.  In that document, Interpleader-Defendant United

States described the factual and legal bases for its claims.  It stated, in pertinent part, that

> [p]ursuant to Section 77(8)(a) of Article 3-A of the New York Lien Law,
> the United States has first priority to the interpleaded funds to the extent
> that the tax liabilities included in the notice of levy were incurred in
> relation to the construction work and materials supplied by Edison Bridge
> to Bast Hatfield with respect to the Wal-Mart Store located at 1541 U.S.
> Route 9, Halfmoon, NY (the Project).

*See id.* at ¶ 8.  It went on to state the relief that it sought: "an order disbursing the interpleaded

funds to the United States to the extent it has first priority to the interpleaded funds, pursuant to

-11-

Section 77(8)(a) of Article 3-A of New York Lien Law." *See id.* at ¶ 11.

The Court finds that whatever uncertainty there was in Interpleader-Defendant United States' pleadings with respect to the purported legal basis for its claim has been subsequently cured. Therefore, the Court concludes that Interpleader-Defendant United States has adequately alleged an Article 3-A claim.[7]

However, even though it has alleged an Article 3-A claim, like Interpleader-Defendant Fidelity, Interpleader-Defendant United States has failed to bring a representative action to enforce the trust. It argues that the requirement of a representative action is a procedural requirement to which it is not subject and that, as the holder of the senior interest, it should not be required to assert the claims of trust beneficiaries with junior interests. Contrary to Interpleader-Defendant United States' argument, the requirement of a representative action "is aimed at safeguarding an equitable pro rata distribution of the funds to all suppliers of material and labor who have improved the real property (see Law Revision Report of 1959, p. 223, Legislative Document 65F, McKinney's 1959 Session Laws, p. 1612)." *Caristo Constr. Corp. v. Diners Fin. Corp.*, 45 Misc. 2d 549, 556-57 (N.Y. Sup. Ct. 1965). Since the requirement of a representative action is integral to Article 3-A's general purpose, before a court can enforce an Article 3-A trust, it must have before it all potential trust beneficiaries. *Cf. City of N.Y. v. Cross Bay Contracting Corp.*, 93 N.Y.2d 14, 22 (1999) ("The priorities of the remaining claimants to the interpleaded funds, including already joined trust beneficiaries, potential trust beneficiaries and any mechanics lienors, must be sorted out and resolved on the remittal of this nonfinalized

---

[7] Since the Court concludes that Interpleader-Defendant United States has adequately alleged an Article 3-A claim, it denies as moot Interpleader-Defendant United States' motion for leave to amend its pleadings to allege such a claim.

case.").

Admittedly, district courts have not always agreed on what form an Article 3-A

representative action must take.  Some have found that a party asserting a claim under Article 3-

A must satisfy the requirements for a class action that Rule 23 of the Federal Rules of Civil

Procedure provides.  *See, e.g., United States Fid. & Guar. Co. v. Madison Fin. Corp.*, No. 01

Civ. 3998, 2002 WL 31731020, *4 (S.D.N.Y. Dec. 4, 2002) (quotations and citations omitted).

Another court has held that the joinder of all potential beneficiaries under Rule 19 of the Federal

Rules of Civil Procedure is sufficient.  *See Syro Steel Co. v. Mellon Bank (East) P.S.F.S. Nat'l

Ass'n*, No. 90-CV-1321, 1993 WL 173439, *1 (N.D.N.Y. May 17, 1993).  Another court

concluded that

> where there is no dispute (1) that a trust fund arose and exists under the
> statutory provisions of the Lien Law, (2) that the plaintiff is a beneficiary
> of the trust fund with regard to the contract for painting the Grand Island
> Bridges, (3) that all of the beneficiaries for whom the trust was statutorily
> established are parties to the action, (4) that what is sought in the action
> is a declaration of rights with respect to the trust fund, and (5) that the court
> has jurisdiction to determine the right of the parties before it . . . the action
> should be allowed to proceed even though the procedural requirements of
> Rule 23 cannot be met.

*Universal Maint., Inc. v. Amherst Painting, Inc.*, No. 94-CV-874H, 1997 WL 160157, *5

(W.D.N.Y. Feb. 20, 1997) (citation and internal citations omitted).   Finally, another court

concluded that "[s]ince diversity is the basis of the Court's jurisdiction and the underlying state

cause of action has to be a representative action this action must be maintainable as a class action

notwithstanding the failure to meet the requirements in Rule 23."  *Ingalls Iron Works Co. v.

Fehlhaber Corp.*, 327 F. Supp. 272, 287 (S.D.N.Y. 1971) (citation omitted).

The requirement in New York Lien Law that "the practice, pleadings, form and procedure

-13-

shall conform as nearly as may be to the practice, pleadings, forms and procedure in a class

action as provided in article nine of the civil practice law and rules . . . .", N.Y. Lien Law § 77(1)

(McKinney 2005), is not rooted in the same concerns for judicial efficiency that shape many of

the requirements for a federal class action.  In fact, New York Lien Law expressly allows

a court to waive the normal class action requirements of numerosity of class, commonality of

questions of law or fact, typicality of the representative parties' claims or defenses, adequacy of

representative parties' protection of the class' interests, and judicial efficiency.  *See id.*; N.Y.

C.P.L.R. § 901(a).  Therefore, the Court finds that the requirement of a representative action

does not require a party asserting an Article 3-A claim to satisfy the class action requirements of

Rule 23 of the Federal Rules of Civil Procedure.  What is required, however, is that the party

asserting an Article 3-A claim ensure that all potential trust beneficiaries are joined in its action.

In the instant case, Defendant has identified three vendors that are potential trust beneficiaries:

Saxton Sign, United Rentals, and Devoe's Rainbow Orchard.  Furthermore, although Defendant

dismissed the NYSDTF without prejudice by stipulation, the Court is uncertain whether the

NYSDTF's claims against Defendant are also trust claims.  Accordingly, since Interpleader-

Defendant United States has not brought a representative action pursuant to Article 3-A, and it

does appear that all potential trust beneficiaries are joined in the instant action, the Court denies

Interpleader-Defendant United States' motion for summary judgment.


D.      **Defendant's request**

        *1. Deposit of interpleader fund*

        Rule 67 of the Federal Rules of Civil Procedure provides, in pertinent part, that

> [i]n an action in which any part of the relief sought is a judgment for a sum
> of money or the disposition of a sum of money . . . , a party, upon notice to
> every other party, and by leave of the court, may deposit with the court all
> or any part of such sum or thing, whether or not that party claims all or any
> part of the sum or thing.

Fed. R. Civ. P. 67.  Defendant has complied with Rule 67, and the Court grants it leave to

deposit the interpleader fund into the Court's registry.

### 2. Attorney's fees and costs

In order to award Defendant attorney's fees and costs, the Court must find that Defendant

(1) is a disinterested stakeholder, (2) has conceded liability, (3) deposited the disputed funds into

the Court, and (4) has sought a discharge from liability.  *See Septembertide Publ'g, B.V. v. Stein*

*& Day, Inc.*, 884 F.2d 675, 683 (2d Cir. 1989) (citation omitted).  The only element that

Defendant has not satisfied is the deposit of the interpleader fund into the Court's registry.  Upon

the deposit of the interpleader fund, Defendant may submit proof of its attorney's fees and costs

and the other parties may respond.

### 3. Discharge

Before a court can discharge an interpleader-plaintiff, it must determine (1) that the

property at issue has a value of $500 or more, (2) that two or more claimants of diverse

citizenship are claiming to be entitled to such property, (3) that the interpleader-plaintiff has

deposited the property into the registry of the court, and (4) that the interpleader-plaintiff is

disinterested.  *See Mendez v. Teachers Ins. & Annuity Ass'n*, 982 F.2d 783, 787 (2d Cir. 1992).

Again, the only element that Defendant has not satisfied is the deposit of the interpleader fund

into the Court's registry.  However, since the record indicates that Defendant has knowledge of

-15-

potential trust beneficiaries who are not currently before the Court, Defendant must also inform the Court of those persons and or entities in order to be discharged from this action and from liability with respect to the interpleader fund.[8]

## IV. CONCLUSION

After carefully considering the file in this matter, the parties' submissions and oral arguments, and the applicable law, and for the reasons stated herein as well as at oral argument, the Court hereby

**ORDERS** that Interpleader-Defendant Fidelity & Guaranty Insurance Company's motion for partial summary judgment is **DENIED**; and the Court further

**ORDERS** that Interpleader-Defendant United States of America, Department of Treasury-Internal Revenue Service's motion for leave to amend its pleadings to allege an Article 3-A claim is **DENIED** as moot; and the Court further

**ORDERS** that Interpleader-Defendant United States of America, Department of Treasury-Internal Revenue Service's motion for summary judgment is **DENIED**; and the Court further

**ORDERS** that Defendant Bast Hatfield, Inc. shall deposit the interpleader fund into the Court's registry within **fourteen (14)** days of the date of this Memorandum-Decision and Order; and the Court further

**ORDERS** that, within **seven (7)** days of depositing the interpleader fund into the Court's

---

[8] Defendant seeks discharge from liability to Interpleader-Defendants with respect to the Project. However, the Court finds that Defendant's requested relief is beyond the scope of this action.

registry, Defendant Bast Hatfield shall file with the Court proof of its attorney's fees and costs; and the Court further

ORDERS that, within **fourteen (14)** days of Defendant Bast Hatfield's filing of its proof of its attorney's fees and costs, the other parties may file with the Court any opposition they have to that proof; and the Court further

ORDERS that, within **thirty (30)** days from the date of this Memorandum-Decision and Order, Defendant Bast Hatfield shall submit to the Court the names and addresses of all potential trust beneficiaries of which it has knowledge; and the Court further

ORDERS that, upon Defendant Bast Hatfield's deposit of the interpleader fund into the Court's registry and submission of the names and addresses of all potential trust beneficiaries of which it has knowledge, Defendant Bast Hatfield shall be **DISMISSED** from this action and from liability to Interpleader-Defendants with respect to the interpleader fund.

**IT IS SO ORDERED**.

Dated: June 8, 2005
        Syracuse, New York

_____
Frederick J. Scullin, Jr.
Chief United States District Court Judge