UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

QUANTUM CORPORATE FUNDING, LTD.,

                             **Plaintiff,**

                 v.

**BAST HATFIELD, INC.,**

                             **Defendant.**
                                                             5:04-CV-137
                                                             (FJS/DEP)
**BAST HATFIELD, INC.,**

                             **Interpleader-Plaintiff,**

                 v.

**FIDELITY & GUARANTY INSURANCE COMPANY;
UNITED STATES OF AMERICA, DEPARTMENT OF
TREASURY-INTERNAL REVENUE SERVICE;
EDISON BRIDGE, L.L.C.; STATE OF NEW YORK
DEPARTMENT OF TAXATION AND FINANCE; and
DEVOE'S RAINBOW ORCHARD,**

                             **Interpleader-Defendants.**
_____

APPEARANCES                                       OF COUNSEL

**MELVIN & MELVIN, LLP**                     ROGER W. BRADLEY, ESQ.
217 South Salina Street
7th Floor
Syracuse, New York 13202
Attorneys for Plaintiff

**COUCH WHITE, LLP**                          MELANIE J. LaFOND, ESQ.
540 Broadway
Albany, New York 12201
Attorneys for Defendant/Interpleader-Plaintiff

| | |
|---|---|
| **COUCH WHITE, LLP**<br>540 Broadway<br>Albany, New York 12201<br>Attorneys for Interpleader-Defendant Fidelity<br>& Guaranty Insurance Company | **JAMES J. BARRIERE, ESQ.**<br>**JEREMY M. SMITH, ESQ.** |
| **UNITED STATES DEPARTMENT OF JUSTICE, TAX DIVISION**<br>P.O. Box 55<br>Ben Franklin Station<br>Washington, D.C. 20044<br>Attorneys for Interpleader-Defendant United States of America, Department of Treasury-Internal Revenue Service | **BONNIE J. PERLIN, ESQ.** |
| **DEVOE'S RAINBOW ORCHARD** | **NO APPEARANCE** |
| **EDISON BRIDGE, LLC** | **NO APPEARANCE** |
| **STATE OF NEW YORK DEPARTMENT OF TAXATION AND FINANCE** | **NO APPEARANCE** |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Currently before the Court are Interpleader-Defendant United States' motion and Interpleader-Defendant Fidelity's cross-motion for summary judgment.

In response to Plaintiff's June 13, 2002 complaint against it in New York State Supreme Court to recover payments due under a series of construction contracts, Defendant Bast Hatfield, Inc. filed an interpleader action, which was subsequently removed to the United States District Court for the Southern District of New York.[1] In its interpleader complaint, Defendant conceded

---

[1] District Judge Koeltl transferred the case to this Court on January 9, 2004. *See* Order,
(continued...)

liability for these contract payments but was uncertain whom it should pay. After Defendant deposited the interpleader fund containing $191,747.63 into the Court's registry and submitted the names and addresses of the known trust beneficiaries, the Court dismissed Defendant from this action and from liability to Interpleader-Defendants with respect to the interpleader fund. *See* Memorandum-Decision and Order, dated June 8, 2005, at 17.

Interpleader-Defendant United States asserts a counterclaim against Defendant and cross-claims against Interpleader-Defendants Edison Bridge, L.L.C. ("Edison"), Fidelity & Guaranty Insurance Company ("Fidelity"), the State of New York Department of Taxation and Finance ("NYDTF"), and Devoe's Rainbow Orchard, asserting that it is entitled to the interpleader fund by virtue of its senior tax lien.[2]

Interpleader-Defendant Fidelity asserts counterclaims against Defendant claiming that Defendant owes it payments of (1) $52,357.04 plus interest on an October 12, 2000 contract ("DOT Subcontract") between Defendant and Interpleader-Defendant Edison together with $150,340.90 plus interest on a second October 12, 2000 contract ("Site Work Subcontract) between Defendant and Interpleader-Defendant Edison; (2) $202,697.94 in *quantum meruit* plus interest for work performed for Defendant by Interpleader-Defendant Edison and its subcontractors, supplies, and laborers; or (3) $202,697.94 plus interest on the basis of Defendant's unjust enrichment by the value of the labor and materials that Interpleader-Defendant Fidelity provided to Defendant. *See* Interpleader-Defendant Fidelity's Answer at ¶ 56.

---

[1](...continued)
dated January 9, 2004.

[2] Specifically, the United States claims that it is entitled to $121,109.41 plus interest. *See* Interpleader-Defendant United States' Amended Answer at ¶¶ 16-18.

Interpleader-Defendants Edison, NYDTF, and Devoe's Rainbow Orchard have not answered Defendant's interpleader complaint or Interpleader-Defendant United States' cross-claims against them. Interpleader-Defendant United States and Interpleader-Defendant Fidelity now renew their motion and cross-motion for summary judgment, which this Court earlier denied based on both parties' failure to bring a representative action to enforce an Article 3-A trust pursuant to New York Lien Law.[3] *See* Memorandum-Decision and Order, dated June 8, 2005, at 9, 12.

## II. BACKGROUND

On October 13, 2000, Defendant, operating as general contractor, entered into a series of contracts ("Subcontracts") with Interpleader-Defendant Edison, operating as subcontractor, for the construction of a Wal-Mart store on Route 9 in Halfmoon, New York ("Project"). Pursuant to the DOT Subcontract, Interpleader-Defendant Edison agreed to provide labor and materials for improvements made in concert with the New York State Department of Transportation ("NYSDOT"). Pursuant to the Site Work Subcontract, Interpleader-Defendant Edison agreed to provide labor and materials relating to the site work for the Project. That same day, Interpleader-Defendant Fidelity, as surety, and Interpleader-Defendant Edison, as principal, executed and delivered to Defendant, as obligee, a subcontract performance bond and a subcontract labor and material payment bond for the Subcontracts.

---

[3] The Court held that, in order to bring a representative action, "the party asserting an Article 3-A claim [must] ensure that all potential trust beneficiaries are joined in its action." *See* Memorandum-Decision and Order, dated June 8, 2005, at 14. Since Interpleader-Defendant United States appears to have joined potential trust beneficiaries NYDTF and Devoe's Rainbow Orchard, it has satisfied this requirement.

In May 2001, Interpleader-Defendant Edison entered into a series of assignment agreements with Plaintiff under which Plaintiff agreed to pay Interpleader-Defendant Edison's subcontractors, suppliers, and laborers in exchange for Interpleader-Defendant Edison's assignment to Plaintiff of the right to recover certain contract amounts related to the Project.

On July 16, 2001, the NYSDOT notified Defendant that the highway improvements to Route 9 were substantially complete. On July 17, 2001, the Town of Halfmoon issued a certificate of occupancy for the Project.

Before September 2001, Interpleader-Defendant Edison became insolvent and began to fail to pay its obligations with respect to the Project. In September 2001, Interpleader-Defendant Fidelity undertook to complete all of Interpleader-Defendant Edison's remaining payment obligations with respect to the Project. Interpleader-Defendant Edison or Interpleader-Defendant Fidelity or both substantially completed the work required under the DOT Subcontract. On September 13, 2002, Interpleader-Defendant Fidelity sent Defendant a notice of claim for the entire amount due to Interpleader-Defendant Edison under the DOT Subcontract. Defendant paid Interpleader-Defendant Edison $747,742.96 on the DOT Subcontract, leaving a balance due of $52,357.04. Defendant paid Interpleader-Defendant Edison $1,113,294.60 on the Site Work Contract, leaving a balance due of $150,340.90.

On September 24, 2001, Interpleader-Defendant United States served a notice of levy on Defendant for $462,752.43 in taxes that Interpleader-Defendant Edison owed.

By letter dated September 28, 2001, Interpleader-Defendant Fidelity undertook to investigate a claim that Plaintiff made against the bond related to the Site Work Subcontract, which claim Fidelity paid following its investigation.

On December 19, 2001, Plaintiff executed a release of Interpleader-Defendants Fidelity and Edison for all claims arising from the Project. The agreement between Plaintiff and Interpleader-Defendant Fidelity provided that, in exchange for a payment from Interpleader-Defendant Fidelity, Interpleader-Defendant Fidelity was subrogated to all of Plaintiff's rights related to the Project. Plaintiff also expressly assigned its rights to Interpleader-Defendant Fidelity.

## III. DISCUSSION

### A.   Priority of interests

Although Interpleader-Defendant Fidelity continues to argue that it has first priority to the interpleader fund under federal tax law, the Court has already held that "New York Lien Law §§ 70-79-a ("Article 3-A") defines the basic contours of this action." *See* Memorandum-Decision and Order, dated June 8, 2005, at 7 (citing *Titan Indem. Co. v. Triborough Bridge & Tunnel Auth., Inc.*, 135 F.3d 831, 836 (2d Cir. 1998)). The Court also implied, and now holds, that Interpleader-Defendant United States and Interpleader-Defendant Fidelity are both trust beneficiaries under Article 3-A. *See id.* at 9, 14. Section 71(2) of New York Lien Law provides that

> [t]he trust assets of which a contractor or subcontractor is trustee shall be held and applied for the following expenditures arising out of the improvement of real property, including home improvement or public improvement and incurred in the performance of his contract or subcontract, as the case may be:
>
>    (a) payment of claims of subcontractors, architects, engineers, surveyors, laborers and materialmen;

   (b) payment of the amount of taxes based on payrolls including such persons and withheld or required to be withheld and taxes based on the purchase price or value of materials or equipment required to be installed or furnished in connection with the performance of the improvement;

   (c) payment of taxes and unemployment insurance and other contributions due by reason of the employment out of which such claims arose;

   (d) payment of any benefits or wage supplements, or the amounts necessary to provide such benefits or furnish such supplements, to the extent that the trustee, as employer, is obligated to pay or provide such benefits or furnish such supplements by any agreement to which he is a party;

   (e) payment of premiums on a surety bond or bonds filed and premiums on insurance accrued during the making of the improvement, including home improvement, or pubic improvement;

   (f) payment to which the owner is entitled pursuant to the provisions of section seventy-one-a of this chapter.

N.Y. Lien Law § 71(2). Persons asserting any of the above claims are "beneficiaries of the trust . . . ." N.Y. Lien Law § 71(4).

 Interpleader-Defendant United States is a beneficiary of the trust under § 71(2)(b). Moreover, since Interpleader-Defendant Fidelity stepped in to complete Interpleader-Defendant Edison's performance, which apparently included the payment of laborers, materialmen, and sub-subcontractors, it is subrogated to the § 71(2)(a) claims that those parties would otherwise have had. *See* N.Y. Lien Law § 77(1). Therefore, Interpleader-Defendant Fidelity is also a beneficiary.

 The remaining issue is which Interpleader-Defendant has priority. Under Article 3-A, it is clear that Interpleader-Defendant United States has first priority to the interpleader fund. New York Lien Law § 77(8) provides that,

> [s]ubject to subdivisions three and four of this section, in any distribution of trust assets pursuant to order or judgment in an action to enforce a trust, the following classes of trust claims shall have preference, in the order named: (a) trust claims for taxes and for unemployment insurance and other contributions, due by reason of employments, and for amounts of taxes withheld or required to be withheld; (b) trust claims of laborers for daily or weekly wages; (c) trust claims for benefits and wage supplements; (d) claims for any amounts of wages of laborers for daily or weekly wages (other than claims for amounts of taxes deducted and withheld, constituting trust claims for such amounts) actually deducted from payments thereof, pursuant to law or agreement, for remittance to any person on behalf of the laborer or in satisfaction of his obligation, to the extent that such person is entitled to assert, as a trust claim, the claim the laborer would otherwise have for such amount.
>
> Except as provided in this subdivision, trust claims entitled to share in any distribution of trust assets pursuant to order of the court shall share pro rata.

N.Y. Lien Law § 77(8).

Since Interpleader-Defendant United States is the only trust beneficiary claiming an interest in employment taxes under subsection (a),[4] its claims are preferred to all other trust beneficiaries in this case, including Interpleader-Defendant Fidelity. *See City of New York v. Cross Bay Contracting Corp.*, 93 N.Y.2d 14, 22 (1999) ("Section 77 of the Lien Law does not contain a presumptive preference even for a fully paying or completing surety. Thus, [the surety's] rights to the trust fund, even as a surety with potential subrogation rights, do not garner a priority over various trust claims, including the IRS claim for taxes 'required to be withheld' in connection with the . . . contract." (citations omitted)). Accordingly, the Court grants

---

[4] If Interpleader-Defendant NYDTF had claimed an interest in the trust fund, it might have shared first priority with Interpleader-Defendant United States. *See Gen. Fire-Proof Door Corp. v. Citibank, N.A.*, 544 F. Supp. 191, 193-94 (S.D.N.Y. 1982). However, because Interpleader-Defendant NYDTF has defaulted in this action, it is not entitled to receive a distribution of the trust assets. *See* N.Y. Lien Law § 77(3)(b).

Interpleader-Defendant United States' motion and denies Interpleader-Defendant Fidelity's cross-motion for summary judgment on the issue of priority to the interpleader fund.

**B.     Damages**

### *1. Payroll taxes*

Interpleader-Defendant United States claims it is entitled to $121,109.41 in unpaid federal employment and unemployment taxes that Interpleader-Defendant Edison owed in connection with the Subcontracts. *See* Interpleader-Defendant United States' Memorandum of Law at 2, 6. Interpleader-Defendant Fidelity does not contest Interpleader-Defendant United States' methodology for calculating Interpleader-Defendant Edison's payroll taxes. Rather, it argues that the underlying figures that Interpleader-Defendant United States used in its formula are inaccurate.

> Interpleader-Defendant United States asserts that
>
> > the amount of payroll taxes attributable to the Walmart Project for any given period should closely approximate (if not precisely equal) the product of the total payroll taxes for the period multiplied by the fraction computed by dividing payroll expense for that project by payroll expenses for all projects during any given period.

*See* Declaration of Bonni J. Perlin, dated January 31, 2006 ("Perlin Decl."), at ¶ 12 (citation omitted). Under this formula, if Interpleader-Defendant Edison inaccurately reported a higher amount of payroll expenses for the Project than it actually incurred, this would artificially inflate the amount of payroll taxes attributable to the Project.

Once a court has determined liability, it may grant summary judgment on the issue of damages so long as the nonmoving party is on notice of the moving party's motion for damages. *See Schwan-Stabilo Cosmetics GMBH & Co. v. Pacificlink Int'l Corp.*, 401 F.3d 28, 33 (2d Cir. 2005). The nonmoving party can only defeat a motion for summary judgment on the issue of damages if it carries its "'burden of coming forward with evidence directed to specific facts showing that there is a genuine issue for trial.'" *West-Fair Elec. Contractors v. Aetna Cas. & Sur. Co.*, 78 F.3d 61, 63 (2d Cir. 1996) (quotation omitted). Conclusory statements that a genuine issue exists will not suffice. *See id.*

Interpleader-Defendant Fidelity introduces evidence that Interpleader-Defendant Edison did not maintain accurate time sheets concerning the amount of payroll expenses allocated to different construction projects; thus, it raises a genuine issue of material fact concerning the amount of damages to which Interpleader-Defendant United States is entitled.[5] Even where the nonmoving party fails to present precise documentation regarding the number of hours actually worked by employees, evidence casting doubt on the integrity of a trust fund claim calculation will preclude summary judgment. *Cf. Demolition Workers Union v. Mackroyce Contracting*

---

[5] It is true that, in tax assessment cases, "the IRS's tax calculations (including calculations of interest and penalties) are presumptively valid . . . ." *United States v. Chrein*, 368 F. Supp. 2d 278, 282 (S.D.N.Y. 2005) (quoting *Chariot Plastics, Inc. v. United States*, 28 F. Supp. 2d 874, 881 (S.D.N.Y. 1998)) (other citation omitted). However, the Court declines to extend this rule to the Article 3-A context. Here, Interpleader-Defendant United States is one of several potential beneficiaries of a trust fund; and each claim, including Interpleader-Defendant United States' claim, is subject to the statutory requirement that it arise out of the improvement of real property. *See* N.Y. Lien Law § 71(2). The calculation of payroll taxes attributable to particular real property improvements may require a more detailed analysis than a general tax assessment. Furthermore, where a case concerns priority to trust assets, the "imperious need" for state or federal taxes, *Bull v. United States*, 295 U.S. 247, 259 (1935), is offset by other competing interests under New York Lien Law.

*Corp*, No. 97 CIV. 4094, 2000 WL 297244, *8 (S.D.N.Y. Mar. 22, 2000); *Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Employers v. Murphy's Tire, Inc.,* No. 97-CV-814, 1998 WL 865594, *9 (N.D.N.Y. Dec. 9, 1998) (quoting *Chicago Dist. Council of Carpenters Pension Fund v. S & M Exteriors, Inc.,* 1996 WL 32798, *1-*2 (N.D. Ill. June 12, 1996)) (denying summary judgment to an ERISA fund on its claim for damages against the employer for deficient contributions because the employer presented evidence of potential inaccuracies in the fund's damage calculations (other citations omitted)).

Interpleader-Defendant Edison's weekly time sheets provided a space for the company to enter the name of the employee and the job that employee worked on during the week. *See, e.g.*, Affidavit of Jeremy M. Smith, sworn to February 21, 2006, at Exhibit "12." Many of the spaces for each employee marked "Job:" were left blank. *See id.* at Exhibit "12" at 1. This raises a question concerning the accuracy of Interpleader-Defendant's QuickBooks entries, which were based on those time sheets. *See id.* at Exhibit "A" at 32, 35-36. For example, Interpleader-Defendant Edison appears to have at least partially attributed employee Steve Janowski's hours for the week of April 21, 2001, to the Project, *see id.* at Exhibit "12" at 4; Exhibit "A" at 42-43; however, his time sheet for that same week contains no record of the jobs on which he worked. *See id.* at Exhibit "12" at 1. Based on this evidence, the Court finds that there is a genuine issue of material fact concerning the amount of payroll taxes to which Interpleader-Defendant United States is entitled. Accordingly, the Court denies Interpleader-Defendant United States' motion for summary judgment on this ground.[6]

---

[6] Since the Court denies Interpleader-Defendant United States' motion for summary judgment on the issue of damages, it need not address Interpleader-Defendant Fidelity's
(continued...)

*2. Interest*

Since there is a genuine issue of material fact concerning the figures on which Interpleader-Defendant United States bases its interest calculations, there is also an issue of fact concerning the amount of interest itself. However, the Court must first decide whether, as a matter of law, Interpleader-Defendant United States may collect any interest on payroll taxes under Article 3-A. Since New York Lien Law "determines what interest competing claimants have in the proceeds of a [real property] improvement contract," *Titan Indem. Co.*, 135 F.3d at 836, the issue of whether a beneficiary may recover tax interest under Article 3-A is one of statutory construction.[7]

In cases of statutory interpretation, a court's first resort must be to the language of the statute itself. *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). The analysis is at an end where that language is plain and unambiguous in the context of the statute as a whole. *See id.* at 340-41. Two provisions of New York Lien Law define the uses for which Article 3-A trust assets may be applied. These are the provisions most relevant to whether a beneficiary of the trust may recover tax interest. Section 71(2), which applies in this case, provides, in pertinent part,

---

[6](...continued)
argument that the QuickBooks entries do not fall within the business records exception to the hearsay rule. However, if Interpleader-Defendant United States intends to use this evidence at trial, Interpleader-Defendant Fidelity may renew its argument at that time.

[7] This is not, as Interpleader-Defendant United States argues, an issue of federal preemption. *See* Interpleader-Defendant United States' Memorandum of Law, dated January 31, 2006, at 11. Although 26 U.S.C. § 6601(e) defines "tax" to include tax interest, the Court has already held that state law governs the parties' interests in the trust assets. The definition of "tax" under 26 U.S.C. § 6601(e) is only applicable within title 26 of the United States Code.

> "[t]he trust assets of which a contractor or subcontractor is trustee shall be held and applied for the following *expenditures arising out of the improvement of real property* . . . and incurred in the performance of his contract or subcontract, as the case may be:
>
> (b) payment of *the amount of taxes based on payrolls* including such persons and withheld or required to be withheld and taxes based on the purchase price or value of materials or equipment required to be installed or furnished in connection with the performance of the improvement . . . .

N.Y. Lien Law § 71(2) (emphasis added).

The parallel provision, § 71(1), provides that "[t]he trust assets of which an owner is trustee . . . shall be held and applied for payment of the *cost of improvement*. . . ." N.Y. Lien Law § 71(1) (emphasis added). The principal difference between these two provisions is that § 71(1) applies to cases in which the owner is the trustee and § 71(2) applies to cases in which the contractor or subcontractor is the trustee, as in the present case.

At the outset, it is clear that § 71(2), by its express terms, does not provide for the payment of interest. Subsection (b) only provides for "expenditures arising out of the improvement of real property," such as "payment of the amount of taxes based on payrolls." N.Y. Lien Law § 71(2). Moreover, the New York Court of Appeals has held that a trust beneficiary cannot recover interest under § 71(1) because interest is not included in the definition of "cost of improvement." *See Tri-City Elec. Co., Inc. v. New York*, 63 N.Y.2d 969, 969 (1984) (citing *Northern Structures v. Union Bank*, 57 A.D.2d 360, 368-369, 394 N.Y.S.2d 964 [(App. Div. 4th Dep't 1977)]; *Gruenberg v. United States*, 29 A.D.2d 527, 285 N.Y.S.2d 962 [(App. Div. 1st Dep't 1967)]). In *Northern Structures*, then-Justice Cardamone explained that

> [t]he definition of "cost of improvement" does not include interest except on prior existing mortgages and building loan mortgages . . .

-13-

> . The policy of this State as contained in Article 3-A of the Lien Law is to give preferred trust protection to the original "cost of improvement" as limited by the definition of that phrase. Generally, interest lawfully accrues on an unpaid liquidated claim. However, in view of the special language of Article 3-A and the policy underlying the Lien Law, the award of prejudgment interest in this case should be vacated . . . .

See *Northern Structures*, 57 A.D.2d at 368-69 (internal citations omitted).

Interpleader-Defendant United States concedes that interest is unavailable under § 71(1); however, it argues that tax interest is available under § 71(2). *See* Interpleader-Defendant United States' Memorandum of Law, dated January 31, 2006, at 11. Interpleader-Defendant United States finds these provisions distinguishable because § 71(1) provides for payments for the "cost of improvement," whereas § 71(2) provides for payments for "expenditures arising out of the improvement of real property." *See id.* It argues that interest is a necessary "expenditure" arising out of an employment tax obligation, as that term is used in § 71(2). *See id.* at 11-12. This argument is without merit.

Aside from the common-sense similarity between "cost of improvement" and "expenditures arising out of the improvement of real property," the New York Lien Law statutory definition section clarifies that these phrases mean the exact same thing. New York Lien Law § 2(5) states that "[t]he term 'cost of improvement,' when used in this chapter, means *expenditures* incurred by the owner in paying the claims of a contractor, an architect, engineer or surveyor, a subcontractor, laborer and materialman, *arising out of the improvement* . . . ." N.Y. Lien Law § 2(5) (emphasis added). The Second Circuit also recognized, in passing, that "'[c]ost of improvement' . . . defines the manner in which owners, general contractors, *and* subcontractors who are trustees under Article 3-A of the Lien Law can spend the proceeds of a

-14-

construction loan. . . ." *In re Elm Ridge Assocs.*, 234 F.3d 114, 125 (2d Cir. 2000) (emphasis added). Accordingly, there is no distinction between § 71(1) and § 71(2) concerning whether interest is available to trust beneficiaries.

Finally, any remaining ambiguity in the phrasing of § 71(2) is resolved by comparison to other sections of the New York Lien Law. As stated, § 71(2) does not expressly provide for the payment of interest. However, New York Lien Law expressly provides for the payment of interest in other sections. For instance, § 2(5) defines "cost of improvement" to include interest on prior existing mortgages and building loan mortgages. *See* N.Y. Lien Law § 2(5); *Northern Structures*, 57 A.D.2d at 368. Additionally, § 3 expressly provides that a mechanics lien holder "shall have a lien for the principal and interest" of the value of work performed by a contractor or subcontractor for the improvement of real property. *See* N.Y. Lien Law § 3; *Gruenberg*, 29 A.D.2d at 527 (citation omitted). Under § 5, the holder of a lien arising from a public improvement contract is similarly entitled to "the principal and interest" of the value of work performed. *See* N.Y. Lien Law § 5; *Gruenberg*, 29 A.D.2d at 528. The New York State Legislature could also have expressly provided for the payment of interest under § 71(1) or § 71(2), but it declined to do so. Therefore, the Court denies Interpleader-Defendant United States' motion and grants Interpleader-Defendant Fidelity's cross-motion for summary judgment with respect to Interpleader-Defendant United States' claim for tax interest.

### IV. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Interpleader-Defendant United States' motion for summary judgment is **GRANTED** and Interpleader-Defendant Fidelity's cross-motion for summary judgment is **DENIED** with respect to Interpleader-Defendant United States' claim for priority interest in the interpleader fund; and the Court further

**ORDERS** that Interpleader-Defendant United States' motion for summary judgment on the issue of damages is **DENIED**; and the Court further

**ORDERS** that Interpleader-Defendant United States' motion for summary judgment is **DENIED** and Interpleader-Defendant Fidelity's cross-motion for summary judgment is **GRANTED** with respect to Interpleader-Defendant United States' claim for tax interest under Article 3-A; and the Court further

**ORDERS** that Interpleader-Defendant United States' counsel is to initiate a telephone conference with the Court and Interpleader-Defendant Fidelity's counsel, using a professional conferencing service, on **June 17, 2008** at **4:30 p.m.**, to set a trial date for this action.

**IT IS SO ORDERED.**

Dated: June 2, 2008
       Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge